1  **DAVID J. ZUGMAN,** State Bar No. 190818
   **BURCHAM & ZUGMAN, A.P.C.**
2  964 Fifth Avenue, Suite 300
   San Diego, California 92101
3  Telephone: (619) 699-5931
   Email: dzugman@burchamzugman.com
4         gburcham@burchamzugman.com

5  **TERRY SINGLETON,** State Bar No. 58316
   **GERALD SINGLETON,** State Bar No. 208783
6  **SINGLETON & ASSOCIATES**
   1950 Fifth Avenue #200
7  San Diego, CA 92101
   Telephone: (619) 239-2196
8  Facsimile: (619) 702-5592
   Email: terry@terrysingleton.com;
9         geraldsingleton73@yahoo.com

10 Attorneys for Plaintiff Brenda Flores-Nunez

11                    UNITED STATES DISTRICT COURT

12                   SOUTHERN DISTRICT OF CALIFORNIA

13 | BRENDA FLORES-NUNEZ,           )  Case No. **08 CV 1881 W CAB**
14 |                                )
   |        Plaintiff,              )
15 |                                )  **COMPLAINT FOR DAMAGES FOR**
   |   v.                           )  **VIOLATION OF CIVIL RIGHTS**
16 |                                )
   | CORBIN DILLON,                 )  **(JURY TRIAL REQUESTED)**
17 | HAROLD CARTER,                 )
   | RAYMOND LOERA,                 )
18 | COUNTY OF IMPERIAL,            )
   | and DOES 1-100, inclusive.     )
19 |                                )
   |        Defendants.             )
20 |_____)

21       Brenda Flores-Nunez, ("Plaintiff"), by and through her attorneys, David J. Zugman, Gary P.

22 Burcham, Terry Singleton, and Gerald Singleton, hereby states and alleges as follows:

23                          **INTRODUCTORY STATEMENT**

24       1.    Title 42 U.S.C. Section 1983 provides a civil remedy for the violation of a person's

25 constitutional or statutory rights by any person who is acting under the color of state law. In the instant

26 matter, Plaintiff was sexually abused by Imperial County Deputy Sheriff Defendant Corbin Dillon at the

27 Imperial County Jail ("ICJ") while Defendant Dillon was engaged in the performance of his official duties

28

1. as an ICJ Correctional Officer. Plaintiff was coerced into sexual contact with Defendant Dillon based upon Defendant Dillon's promises to her, while Plaintiff was in protective custody after attempting to harm herself just hours earlier, that if she provided sexual favors to him, he would help her secure her release from custody on bond.

2. Plainly, the sexual abuse of an inmate violates rights accorded to her under the Constitution and laws of the United States. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers no shield); *Mathie v. Fries*, 935 F. Supp. 1284, 1301 (E.D. N.Y. 1996) (denying qualified immunity to director of prison security because "any reasonable prison Director of Security knew that to try to force unwanted and prohibited sexual acts on a powerless inmate is objectively unreasonable and in violation of the inmates rights"). The County of Imperial ("County") shares culpability in this invasion of Plaintiff's rights as Defendant Dillon's predatory behavior was allowed to occur and caused by a policy or custom made, implemented and/or ratified by these Defendants which directly caused Plaintiff's injuries. The circumstances were such that the failure of Imperial County to address sufficiently this rampant problem at the ICJ that *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978), liability is appropriate.

3. Sheriff Dillon violated Plaintiff's constitutional rights by using his position of power and authority over Plaintiff to extort sexual conduct from her. Defendants County, Sheriffs Carter and Loera, and other DOE Defendants are liable for Sheriff Dillon's violation of Plaintiff's personal bodily integrity and her constitutional right not to be sexually abused. Plaintiff was in the County's custody and it owed her a duty of care to protect her from potential threats to her health and welfare. Defendant County, Sheriffs Carter and Loera, and other DOE Defendants breached their duty to protect Plaintiff by failing to train and supervise Sheriff Dillon both prior to and on the night of the assault. Failing to train and/or supervise guards which allows those guards to sexually assault inmates states a cause of action under Section 1983. *Kahle v. Malone*, 477 F.3d 544, *cert. denied*, 128 S. Ct. 201 (8th Cir. 2007). Further, Plaintiff believes that Defendant County, Sheriffs Carter and Loera, and other DOE Defendants were on notice of Sheriff Dillon's possible misconduct because of prior incidents, but did not act to remedy the threat.

4. The incident in which Defendant Dillon coerced Plaintiff into having sexual relations with

him was not isolated. Plaintiff is informed and believes that Defendant Dillon also had sexual relations with numerous other female inmates at the ICJ, and that other ICJ guards, including Officer James Morris who suffered a felony conviction for sexually abusing no less than three female inmates, also were sexually abusing female inmates.

5. Defendant Dillon, and DOE Defendants, acted separately and together to deprive Plaintiff of rights guaranteed to her by the laws of this country and state. Imperial County is liable in this matter as the lack of supervision, training, and response to this problem constituted a policy or custom in support of Defendant Dillon's behavior which necessitates a finding of *Monell* liability.

## JURISDICTION

6. This Court has jurisdiction to hear this case pursuant to Title 42 U.S.C. § 1983, Title 28 U.S.C. §§ 1331 and 1343, and Article III of the United States Constitution. The Southern District of California is the proper venue because the acts and omissions alleged herein occurred in the County of Imperial, State of California, which is located within the Southern District of California.

## THE PARTIES

7. Plaintiff Brenda Flores-Nunez is a 29 year-old female.

8. Defendant County is a duly organized municipal corporation located in the State of California.

9. Defendant Harold Carter was, at certain times before and during the times set forth herein, the duly elected Sheriff of the County. As such, he was the commanding officer of the ICSD. He is sued both individually and in his official capacity.

10. Defendant Ray Loera is, and was at certain times, during the times set forth herein, the Sheriff of the County after Harold Carter left the position. As such, he was the commanding officer of the ICSD. He is sued both individually and in his official capacity.

11. Defendant, Corbin Dillon is, and at all times herein mentioned was, a law enforcement officer employed by the County through the Imperial County Sheriff's Department ("ICSD"). In the course of his duties and acting under color of law, he inflicted the violations of civil rights alleged herein. Defendant Dillon is responsible by law for enforcing the regulations of the County and the ICSD and for ensuring that

the other as yet unidentified DOE Defendants obeyed the laws of the State of California and the United States.

12.  The unknown individuals who committed the acts, including those charged with training and supervising Sheriff Dillon and those who had a duty of care to protect Plaintiff, are sued as DOES. Plaintiff will seek leave to amend the Complaint to allege the true identities of these individuals when their identities are discovered.  The true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as "DOE" intentionally, negligently or in some other manner participated in the events and happenings herein referred to and negligently or in some other manner caused injuries proximately and directly to Plaintiff as herein alleged.

13.  At all times mentioned herein, each of the Defendants, including those designated by fictitious names, were the agents and employees of the remaining Defendants, and in acting in the manner stated herein, were acting within the course and scope of such agency and/or employment, and also were acting in concert with one another.

## FACTUAL ALLEGATIONS

14.  In October 2006, Defendant Dillon was employed by the County and assigned to the ICJ as a Correctional Officer.  As part of his job, he had direct contact with female inmates.  It is believed that Defendant Dillon is married to the grand-daughter of Defendant Carter.

15.  On or about October 18, 2006, Plaintiff was arrested by Imperial County Sheriff Deputies on suspicion of shoplifting in the Imperial Valley Mall.

16.  Plaintiff was despondent and severely depressed following her arrest.  Plaintiff has a history of suffering from severe depression and has received a significant amount of treatment for her depression in the past.  Plaintiff also has been prescribed mental health drugs as part of her treatment for depression.

17.  Following her arrest, Plaintiff was allowed to use a restroom, accompanied by a female officer.  While Plaintiff was in a restroom stall, she attempted to commit suicide by cutting herself with a sharp object on her wrists and arms.

18. The female officer opened the stall door and found Plaintiff bleeding. The officer called paramedics to the scene and Plaintiff's self-inflicted wounds were treated by medical personnel.

19. Plaintiff then was transferred to ICJ. Upon her arrival at ICJ, Plaintiff was placed in a segregated cell for observation and was given only a gown to wear for clothing. Plaintiff was put on suicide watch to protect her against any further harm she might try to cause herself. Plaintiff was told that she was going to be held in the cell for the night for observation. Plaintiff was given an injection believed to be some sort of sedative prior to being locked in the call.

20. Plaintiff remained despondent and severely depressed following her booking into ICJ. Plaintiff also was feeling physically ill while she was locked in the cell.

21. Sometime during the night, Defendant Dillon entered Plaintiff's cell. Defendant Dillon shined a flashlight on Plaintiff when he entered the cell, and he subsequently entered and exited multiple times. Plaintiff was in an isolated and vulnerable state given her general emotional fragility and having had attempted suicide a few hours earlier.

22. Defendant Dillon spoke with Plaintiff about various things while in the cell, including asking her personal questions, asking her why she had been arrested, and discussing her bail with her. Defendant Dillon also told Plaintiff that he thought she was pretty.

23. During one of these exchanges, Defendant Dillon told Plaintiff that he could help her bail out of custody. Defendant Dillon then asked Plaintiff if she would remove her gown and show him her naked body.

24. Plaintiff, who remained in a severely depressed and fragile emotional state, believed that if she did what was asked by Defendant Dillon, he would help her obtain her release on bond. She also believed that if she did not do what Defendant Dillon asked, she would not be released, and that Defendant Dillon might retaliate against her for rejecting his advances.

25. For these reasons, Plaintiff exposed her body to Defendant Dillon, and Defendant Dillon made comments to the effect that he thought that she was pretty and that he liked her body.

26. Defendant Dillon then began unbuttoning his pants and he told Plaintiff that he wanted her to give him oral sex.

27. Again believing that agreeing to Defendant Dillon's requests was the only way she would be released on bond, and also fearing retaliation if she refused to agree to his request, Plaintiff got on her knees in front of Defendant Dillon and performed oral sex on him.

28. Plaintiff performed oral sex on Defendant Dillon for a period of what she believes to be between three and five minutes. Defendant Dillon ejaculated in her mouth while Plaintiff was giving him oral sex. Immediately after ejaculating in Plaintiff's mouth, Defendant Dillon pulled up his pants, buttoned them, and left the cell, leaving Plaintiff kneeling on the floor.

29. Defendant Dillon did not return to the cell. The next person to enter the cell was a psychiatrist who entered the cell early in the morning to check on Plaintiff.

30. Defendant Dillon's actions took place over the course of the night and required that no supervisor was monitoring his activities and that there was no supervision of his conduct.

31. Plaintiff's mental and physical conditions worsened as a result of her sexual abuse by Defendant Dillon. Plaintiff's depression became more pronounced, she felt dazed, and she felt physically ill as a result of her encounter with Defendant Dillon.

32. Plaintiff was not released on bond as Defendant Dillon had promised. Once she returned to the ICJ general population, she spoke with other inmates about what had occurred and other inmates told her that other females also had been sexually abused by guards, including Defendant Dillon, at ICJ.

33. Plaintiff did not report the actions of Defendant Dillon to authorities at ICJ because she feared retaliation by guards and/or other inmates if she disclosed what had occurred. Her fear of retaliation was based, in part, on comments that were made to her that Defendant Dillon was related to the sheriff, and that she would be retaliated against if she spoke up about what occurred.

34. This incident of sexual abuse of female inmates by ICJ guards was not an isolated incident.

35. Adriana Fernandez was being held at the Imperial County Jail as a pretrial detainee in a federal case. James Morris ("Morris") was one of the Correctional Officers with whom Ms. Fernandez came into contact with during her stay at ICJ. Soon after her arrival, Morris made small talk with Ms. Fernandez, saying that he had recognized her from a previous term at the ICJ. The small talk from Morris progressed from flirtation to repeated and persistent requests that Ms. Fernandez engage in sexual relations

with him. Morris made it clear to Ms. Fernandez that her acquiescing to his sexual desires would benefit her during her time in custody, while failing to do so would result in harsher treatment. After engaging in sexual contact with Morris, Ms. Fernandez started suffering symptoms from venereal diseases she had contracted from Morris, including syphilis, and two strains of herpes.

36. Morris was arrested and prosecuted by the Imperial County District Attorney's Office for his sexual conduct with Ms. Fernandez. On September 13, 2007, Morris pled guilty to one felony count (violation of Cal. Penal Code Section 289.6(a)(2)) for the conduct outlined above. A total of 3 victims were named in the criminal complaint and sentencing forms issued by the Imperial County Superior Court.

37. Plaintiff is informed and believes that this sexual misconduct was well known to other inmates and to other correctional officers, including supervisory employees of the ICSD and the County who worked at the ICJ. Additionally, Plaintiff is informed and believes that there were other ICSD and County employees who also sexually abused female inmates during this time period. The actions of Defendants Dillon, Morris, and other ICSD and County employees could not have occurred but for the deliberate indifference, help, assistance, and/or acquiescence of other Deputy Sheriffs and/or County employees who had a duty to protect the female inmates from this predatory behavior, but did nothing to stop it. The conduct of these individuals, as well as those charged currently as DOES, show a corruption so pervasive that other correctional officers or Deputy Sheriffs must have assisted this conspiracy or failed to discharge their sworn duty to protect the rights of these vulnerable female inmates.

38. During all the acts set forth herein, Defendants, and each of them, were acting under the color of their authority as Deputy Sheriffs and/or law enforcement officers or agents of the County. Further, Defendant County, Defendant Sheriffs Carter and Loera, and other supervisory and training personnel are individually and personally liable for this constitutional violation because their individual and collective failure to train, supervise, or their individual and/or collective incompetence in executing the training and supervision led to the violation of Plaintiff's constitutional right to be free of sexual depredations by a law enforcement officer.

39. As a proximate result of the conduct of Defendants, and each of them, Plaintiff was hurt and injured in her strength, health and activity, sustaining injuries to her body and shock and injury to her

1  nervous systems and person, all of which said injuries have caused, and will continue to cause, Plaintiff

2  great mental, emotional, physical and nervous pain and suffering. Plaintiff is informed and believes and

3  thereon allege that said injuries will result in permanent mental disabilities to Plaintiff.

4  <center>**CAUSE OF ACTION**</center>

5  <center>**(Deprivation of Rights Under Color of State Law - 42 U.S.C. § 1983 - As to All Defendants)**</center>

6       40.     Plaintiff reasserts and re-alleges Paragraphs 1 through 39 of this Complaint as though the

7  same were set forth herein in full.

8       41.     Plaintiff alleges that Defendants Dillon, Carter, Loera, and DOES 1 through 100, employees

9  of the County, acting in the course and scope of their employment with the County through its Sheriff's

10  Office, and acting under the color of authority, violated the protections and rights guaranteed to Plaintiff

11  by laws, treaties, and the Constitution of the United States.

12       42.     Defendants Dillon, Carter, Loera, and DOES 1 through 100, as of yet unknown officers

13  and/or agents of the County and the ICSD individually, and through their conspiracy with one another, and

14  pursuant to the official policy and/or custom of the ICSD, deprived Plaintiff of her federally protected

15  constitutional rights while acting under color of their authority as law enforcement personnel. Defendant

16  County is liable because this incident resulted from official policy and/or a longstanding practice or custom

17  of the ICSD.

18       43.     Defendants Carter, Loera, and the County are liable because a policy or custom made,

19  implemented and/or ratified by these defendants caused the violation of federal law by Defendants Dillon,

20  and DOES 1-100, which directly caused Plaintiff's injuries. In addition, each of these governmental entities

21  is liable for the violations of constitutional rights committed by their agents, officers, and employees against

22  Plaintiff because these constitutional violations were ratified by a policy-making level employee. Thus,

23  Plaintiff contends that a policy-making level employee for each governmental entity defendant made, or

24  ratified, a decision that deprived Plaintiff of her constitutional rights.

25       44.     Defendants Carter, Loera, and County of Imperial are also liable through their (separate and

26  joint) omissions for the constitutional and statutory violations committed by its employees independent of

27  ratification. Even if the policy and custom was not ratified by Defendants Carter, Loera, or the County, and

28

regardless of whether their policies were facially constitutional, whether Defendants did not direct the employee to take the unconstitutional action, and whether the municipality did not have the state of mind required to prove the underlying violation, the deliberate indifference of the County, Carter, and Loera led it to its omissions which allowed Defendant Dillon and DOE defendants to engage in the systemic violation of Plaintiff's constitutional and statutory rights. Further, Defendants County, Carter, and Loera, were on actual or constructive notice that their omission(s) would likely result in a constitutional violation.

45. Defendants Dillon, Carter, Loera, and DOES 1 through 100 conspired and arranged for Defendants' illegal and unconstitutional treatment of Plaintiff not to be reported to proper authorities and for Defendants, including Defendant Dillon who is believed to be related to Defendant Carter by marriage, not to suffer any adverse consequences in their employment as a result of their illegal and unconstitutional conduct toward Plaintiff.

46. In doing the acts described herein above, Defendants Dillon, Carter, Loera, and DOES 1 through 100, were acting as the agents, servants, workmen, employees, and/or co-conspirators of all other Defendants, and each of them. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining defendants, and in doing the things in here alleged, was acting within the scope of such agency. Defendant Dillon, and any other DOE Defendant who acted as a supervisor during this incident, is liable both for his/her individual acts and for any other unconstitutional acts committed by others which the supervisory Defendant set in motion. Finally, Defendant Sheriffs Carter and Loera (and DOE supervisory ICSD employees sued herein as DOES 1-100) are liable because they ratified and/or condoned the unconstitutional and illegal conduct of Defendants Dillon and DOES 1-100. Because Defendants Sheriff Carter and Loera and the supervisory DOE Defendants are sued in their official capacities (in addition to their individual capacities), the County is liable for their illegal conduct.

47. In committing the acts and omissions alleged and described herein above, Defendants were acting under the color of the laws of the State of California and the County, to deprive Plaintiff of federally protected rights under the Fourth and Amendment. Each of the Defendants named herein acted under color of authority of the State of California and the County of Imperial.

48. At no time did Plaintiff give valid, lawful consent to the unlawful acts of Defendants, nor did Plaintiff ever give consent to any of the other unlawful and tortious actions committed by Defendants as alleged herein.

49. As a direct and proximate result of the above-described unlawful and malicious acts of Defendants, all committed under color of their authority and while acting in that capacity, Plaintiff suffered grievous bodily harm, pain, and severe mental suffering, all of which is in violation of her rights under the laws and constitution of the United States.

50. By reason of the Defendants' conduct, Plaintiff was deprived of rights, privileges, and immunities secured to her by the Constitution and laws of the United States (and particularly, the Fourth Amendment), in that her sexual abuse amounted to an arbitrary, unlawful intrusion by Defendants into the security of Plaintiff's privacy, person, body, and bodily integrity, were not authorized by law. Additionally, Plaintiff's rights were violated in that the contacts on Plaintiff's person and damage to her person deprived Plaintiff of liberty and property interests without due process of law.

51. In doing the things herein alleged, Defendants, and each of them, acted willfully. The acts of each of the Defendants were in violation of the laws of the United States of America and the State of California and constitute malice, oppression, and fraud, in that the Defendants intended to cause injury to Plaintiff, thus entitling Plaintiff to punitive damages against Defendants Dillon, and DOES 1-100.

52. By this action, Plaintiff seeks all legal and equitable relief to which she may be entitled, including, but not limited to, compensatory and punitive damages, attorneys fees and costs, and prejudgment interest.

### JURY DEMAND

Plaintiff hereby respectfully makes a demand for a jury trial.

### PRAYER FOR JUDGMENT AND DAMAGES

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them, as follows:

(1) for general damages in an amount according to proof at the time of trial;

(2) for specific damages in an amount according to proof at the time of trial;

(3) for punitive damages (against Defendants Dillon, Carter, and Loera and DOES 1-100);

(4) for attorney fees and costs pursuant to Title 42 U.S.C. §§ 1983, 1985, and any and all other federal, state or local statutory, case law or equitable powers of this Court that may apply;

(5) for an order granting such other and further relief, including pre-judgment interest, as the Court may deem equitable and just.

Respectfully submitted this 15th day of October 2008,

By: _____
**DAVID J. ZUGMAN**
**GERALD SINGLETON**
Attorney for Plaintiff Brenda Flores-Nunez

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 156072      - TC

October 15, 2008
12:54:19

Civ Fil Non-Pris
USAO #.: 08CV1881
Judge..: THOMAS J WHELAN
Amount.:                $350.00 CC


Total-> $350.00


FROM: FLORES-NUNEZ
      VS
      DILLON

℀JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
BRENDA FLORES-NUNEZ

**(b)** County of Residence of First Listed Plaintiff  **MEXICO**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Burcham & Zugman, A.P.C., 964 Fifth Avenue #300 SD CA 92101

## DEFENDANTS
CORBIN DILLON, HAROLD CARTER, RAYMOND LOERA, COUNTY OF IMPERIAL, DOES 1-100

08 OCT 15 PM 12:52

County of Residence of First Listed Defendant  **IMPERIAL**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
**08 CV 1881 W CAB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
   Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983

Brief description of cause:
Violation of civil rights by correctional officer's sexual abuse of inmate

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE
10/15/2008

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # 156072  AMOUNT $ 350  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ste 10/15/08